IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DIANNE L. OPSATNIK, by and through her Attorney-in-Fact, MICHELLE KECZMER,

Plaintiff,

vs.

No.: 2:20-cv-199

ALLEGHENY COUNTY, as owner and operator of JOHN J. KANE REGIONAL CENTER-SC d/b/a KANE SCOTT CENTER, a skilled nursing facility,

Defendant.

## PLAINTIFF'S COMPLAINT

AND NOW, comes the Plaintiff, Dianne L. Opsatnik, by and through her Attorney-in-Fact, Michelle Keczmer, and by and through her undersigned counsel, Elizabeth A. Chiappetta, Esquire; Cynthia A. Howell, Esquire; and the law firm of Robert Peirce & Associates, P.C., and files this Complaint for the Defendant's violations of duties imposed upon them under the Omnibus Budget Reconciliation Act of 1987 ("OBRA"), the Federal Nursing Home Reform Act ("FNHRA"), 42 U.S.C. § 1396r, *et seq.*, and the implementing regulations found at 42 C.F.R. § 483, *et seq*, and for violations of the Constitution of the United States of America under Amendment 14, enforceable under 42 U.S.C. § 1983, against the Defendant Allegheny County, as owner and operator of John J. Kane Regional Center-SC d/b/a Kane Scott Center, a skilled nursing facility.

### Nature of Action

1. This is a proceeding under 42 U.S.C. § 1983 to remedy violations of duties under the Omnibus Budget Reconciliation Act of 1987, the Federal Nursing Home Reform Act, the Federal Nursing Home Regulations, as found at 42 C.F.R. § 483, and the Constitution of the United States of America.

1

## Jurisdiction and Venue

2. As the instant case presents issues of Federal Law, jurisdiction is proper in this forum as a federal question, pursuant to 28 U.S.C. § 1331.

3. Venue lies within this judicial district, since all of the actions complained of herein occurred within the Western District of Pennsylvania.

## Parties

4. Plaintiff Dianne L. Opsatnik is an adult individual who currently resides at Providence Care Center, Beaver Falls, Beaver County, Pennsylvania 15010.

5. Dianne L. Opsatnik appointed her daughter Michelle Keczmer as her Attorney-in-Fact.

6. Defendant Allegheny County, Pennsylvania, is a governmental agency with its government offices located at 436 Grant Street, Pittsburgh, Allegheny County, Pennsylvania, Pennsylvania 15219.

7. John J. Kane Regional Center-SC d/b/a Kane Scott Center, is a skilled nursing facility with its principal place of business located at 300 Kane Boulevard, Pittsburgh, Allegheny County, Pennsylvania, 15243.

8. Defendant, Allegheny County owns and operates John J. Kane Regional Center-SC d/b/a Kane Scott Center.

9. As such, at all times relevant hereto, John J. Kane Regional Center-SC d/b/a Kane Scott Center is a governmental agency acting under the color of state law.

10. At all times relevant hereto, John J. Kane Regional Center-SC d/b/a Kane Scott Center operated as a "long term care nursing facility" as that term is defined in 35 P.S. §448.802A.

11. Accordingly, John J. Kane Regional Center-SC d/b/a Kane Scott Center is a "licensed professional" as that term is defined in 40 P.S. § 1303.503.

12. At all times relevant hereto, John J. Kane Regional Center-SC d/b/a Kane Scott Center operated as a "skilled nursing facility" as that term is defined in 42 U.S.C. §1395i-3.

13. At the time of the incidents pled herein, John J. Kane Regional Center-SC d/b/a Kane Scott Center was acting under the control of Allegheny County, and was acting by and through its authorized agents, servants and employees then and there acting within the course and scope of their employment.

14. Defendant Allegheny County is a county government organized and existing under the laws of the Commonwealth of Pennsylvania. At all times relevant hereto, Defendant Allegheny County, acting through John J. Kane Regional Center-SC d/b/a Kane Scott Center was responsible for the policies, practices, supervision, implementation and conduct of all matters pertaining to the John J. Kane Regional Center-SC d/b/a Kane Scott Center facility and was responsible for the appointment, training, supervision and conduct of all John J. Kane Regional Center-SC d/b/a Kane Scott Center personnel. In addition, at all relevant times, Defendant Allegheny County was responsible for enforcing the rules of the John J. Kane Regional Center-SC d/b/a Kane Scott Center facility and for ensuring that personnel employed in the facility obey the Constitution and laws of the United States and of the Commonwealth of Pennsylvania.

15. Hereinafter, Allegheny County and John J. Kane Regional Center-SC d/b/a Kane Scott Center will collectively be referred to as "Kane."

## Statement of Claims

16. The facts relevant to the causes of action stated herein were known, or in the exercise of due diligence, should have been known to Defendant during Dianne L. Opsatnik's residency at Kane, or upon her discharge from its facility.

17. At all times relevant hereto, Kane operated as a "skilled nursing facility" as that term is defined at 42 U.S.C. § 1395i-3.

18. At all times relevant hereto Defendant Kane was acting independently and by and through its authorized agents, servants and/or employees, who were then and there acting within the course and scope of their employment.

19. No other actions have been commenced regarding the injuries Ms. Opsatnik sustained at Defendant's Facility.

20. Ms. Opsatnik became a resident of Kane on December 29, 2014.

21. Upon admission, it was known or should have been known that Ms. Opsatnik had Alzheimer's dementia, Parkinson's Disease, and hypertension.

22. The first several years of Ms. Opsatnik's residency appear to have been uneventful.

23. On October 20, 2017, Ms. Opsatnik had a psychiatric consultation at which time it was noted that she had a persistent cognitive decline.

24. Ms. Opsatnik's Care Plan was updated on December 7, 2017, to note an unsteady gait and it was well documented that she required substantial assistance to ambulate safely.

25. On January 21, 2018, Kane staff noted a decline in Ms. Opsatnik's condition and that she was leaning to the left when walking.

26. There is no evidence that Ms. Opsatnik's physician or family were notified of this change in her condition.

27. Ten days later, on January 31, 2018, a yellowish green bruise measuring 5 cm x 4 cm on the inferior aspect of Ms. Opsatnik's left arm was noted.

28. No fall was noted, nor did Kane staff question whether Ms. Opsatnik's leaning while ambulating may have caused her to bump into something.

29. Despite Ms. Opsatnik's confusion and forgetfulness, as documented on February 2, 2018, combined with the bruise and unsteady gait, no change in her plan of care was made.

30. On February 7, 2018, Ms. Opsatnik was rising from the breakfast table unattended, without assistance or supervision, lost her balance, and fell to the floor.

31. Ms. Opsatnik complained of severe left hip and arm pain, had difficulty with range of motion, and her leg was shortened and rotated.

32. An order was entered for transfer to the hospital for evaluation.

33. Upon presentation to St. Clair Hospital, Ms. Opsatnik was noted to be confused, and an x-ray revealed she had suffered a subcapital fracture of her left hip.

34. Ms. Opsatnik was admitted to St. Clair Hospital and underwent a left hip cementless hemiarthroplasty on February 8, 2018.

35. Ms. Opsatnik returned to Kane on February 11, 2018, and her condition deteriorated.

36. Ms. Opsatnik was in constant pain, had increased confusion and speech difficulty.

37. As a result of the rapid decline following her fall, it was recommended on March 26, 2018 that Ms. Opsatnik move to long term care due her inability to meet the criteria to remain on the current nursing unit.

38. As a result of the substandard care received by Ms. Opsatnik from Kane, Ms. Opsatnik sustained a significant hip injury that required surgery.

39. Kane, as well as its employees, staff and agents, had a duty to ensure that all persons providing care within Kane's facility were competent to provide that care.

40. At all times material hereto, Kane, as well as its employees, staff and agents owed a duty to protect residents such as Ms. Opsatnik, against the hazards she encountered and the harm she suffered while residing at Kane's facility.

41. Kane, as well as its employees, staff and agents, had a duty to formulate and enforce adequate rules and policies to ensure quality care for residents such as Ms. Opsatnik.

## COUNT I

### Deprivation of Civil Rights Enforceable Via 42 U.S.C. § 1983

42. All of the preceding paragraphs of the within Complaint are incorporated herein as if set forth more fully at length.

43. Defendant Kane is an agent of the Commonwealth of Pennsylvania, and at all times relevant to this Complaint was acting under the color of state law.

44. Defendant Kane is bound generally by the Omnibus Budget Reconciliation Act of 1987 ("OBRA") and the Federal Nursing Home Reform Act ("FNHRA") which was contained within the Omnibus Reconciliation Act of 1987. See 42 U.S.C. § 1396r, 42 U.S.C. § 1396(a)(w), as incorporated by 42 U.S.C. § 1396r.

45. Defendant Kane is also bound generally by OBRA/FNHRA implementing regulations found at 42 C.F.R. § 483, *et seq.*, which served to define specific statutory rights set forth in the above-mentioned statutes.

46. The specific detailed regulatory provisions, as well as the statutes in question, create rights which are enforceable pursuant to 42 U.S.C. § 1983, as the language of these regulations and statutory provisions clearly and unambiguously creates those rights.

47. Upon information and belief, Kane, as a custom and policy, failed to adhere to the above statutes and regulations and/or, in the alternative, that Kane failed to implement and follow appropriate custom and policies and/or, in the alternative, that Kane had unwritten customs and policies that did not adhere to the applicable statutes and regulations.

48. Defendant Kane, in derogation of the above statutes and regulations, and as a custom and policy, failed to comply with the aforementioned regulations, as follows:

   a. By failing, as a custom and policy, to care for patients, including Ms. Opsatnik, in a manner that promoted maintenance or enhancement of her life, as required by 42 C.F.R. § 483.24[1] and 42 U.S.C. § 1396r(b)(1)(A);

   b. By failing, as a custom and policy, to notify the family members of residents, including Ms. Opsatnik, concerning a significant change in condition as required by 42 C.F.R. § 483.10;

   c. By failing, as a custom and policy, to promote the care of residents, including Ms. Opsatnik, in a manner and in an environment that maintained or enhanced her dignity, as required by C.F.R. § 483.24 and 42 U.S.C. § 1396r(b)(1)(A);

   d. By failing, as a custom and policy, to develop a comprehensive Care Plan and assessment for residents, including Ms. Opsatnik, as required by 42 C.F.R. § 483.21 and 42 U.S.C. § 1396r(b)(2)(A);

   e. By failing, as a custom and policy, to provide residents, including Ms. Opsatnik, the necessary care and services to allow her to attain or maintain the highest practicable physical, mental and psycho-social wellbeing, as required by 42 C.F.R. § 483.24 and 42 U.S.C. § 1396r(b)(3)(A);

   f. By failing, as a custom and policy, to provide residents, including Ms. Opsatnik, the necessary care and services to preclude them from experiencing a reduction in range of motion and/or providing appropriate treatment and services to increase range of motion, as required by 42 C.F.R. § 483.25(c) and 42 U.S.C. § 1396r(b)(3)(A);

---

[1] For purposes of the within pleading, all references to the OBRA Regulations are to those that were in effect on February 7, 2018, the date of Dianne L. Opsatnik's injury.

g. By failing, as a custom and policy, to periodically review and revise a patient's or resident's written Plan of Care, including Ms. Opsatnik, by an interdisciplinary team after each of the resident's or patient's assessments, as described by 42 U.S.C. § 1396r(b)(3)(A), as required by 42 U.S.C. § 1396r(b)(2)(C);

h. By failing, as a custom and policy, to conduct an assessment of a patient or resident, including Ms. Opsatnik, as required by 42 U.S.C. § 1396r(b)(3)(A), promptly after a significant change in the resident's physical or mental condition, as required by 42 U.S.C. § 1396r(b)(3)(C)(i)(II);

i. By failing, as a custom and policy, to use the results of the assessments required as described above in developing, reviewing and revising Ms. Opsatnik's Plan of Care, as required by 42 U.S.C. § 1396r(b)(3)(D);

j. By failing, as a custom and policy, to ensure that patients or residents, including Ms. Opsatnik, were provided medically related social services to attain or maintain the highest practicable physical, mental and psycho-social wellbeing, as required by 42 C.F.R. § 483.24 and 42 U.S.C. § 1396r(b)(4)(A)(ii);

k. By failing, as a custom and policy, to ensure that the personnel responsible for the care of residents was properly certified and/or re-certified as being qualified to perform necessary nursing services, as required by 42 U.S.C. § 1396r(b)(4)(B);

l. By failing, as a custom and policy, to provide sufficient nursing staff to provide nursing and related services that would allow patients or residents, including Ms. Opsatnik, to attain or maintain the highest practicable physical, mental and psycho-social well-being, as required by 42 C.F.R. § 483.35 and 42 U.S.C. § 1396r(b)(4)(C);

m. By failing, as a custom and policy, to maintain clinical records on all residents, including Ms. Opsatnik, including but not limited to the Plans of Care and resident's risk assessments, as required by 42 C.F.R. § 1396r(b)(6)(C);

n. By failing, as a custom and policy, to ensure that Kane was administered in a manner that enabled it to use its resources

      effectively and efficiently to allow patients or residents, including Ms. Opsatnik, to attain or maintain their highest practicable level of physical, mental and psycho-social wellbeing, as required by 42 C.F.R. § 483.70, 42 U.S.C. § 1396r(d)(A) and 42 U.S.C. § 1396r(d)(1)(A) and 42 U.S.C. § 1396r(d)(1)(C);

o. By failing, as a custom and policy, to ensure that the administrator of Kane met the standards established under 42 U.S.C. § 1396r(f)(4), as required by 42 U.S.C. § 1396r(d)(1)(C);

p. By failing, as a custom and policy, to ensure that Kane was complying with the federal, state, local laws and accepted professional standards which apply to professionals providing services to residents, including Ms. Opsatnik, and in operating such a facility as Kane, as required by 42 U.S.C. § 1396r(d)(4)(A); and,

q. By failing, as a custom and policy, to ensure that Kane's administrator and director of nursing properly monitored and supervised subordinate staff, thereby failing to ensure the health and safety of residents or patients, including Ms. Opsatnik, in derogation of 42 C.F.R. § 483.75 and 42 U.S.C. § 1396r(b)(B).

49. In particular, and as further evidence that the Kane's failures were systemic and part of a custom and policy, Kane has been cited numerous times between September 25, 2015 and July 9, 2018 for regulatory violations directly relevant to the allegations in Plaintiff's Complaint.[2] The regulations at issue amplify the mandates of the FNHRA. For example:

a. Kane has been cited for violations of 42 CFR § 483.25, Quality of Care, on at least three occasions during this time period. Included among these citations are violations of regulations relating to the failure to follow physicians' orders; failure to acquire physician orders; and a failure to care for a resident that was a fall risk. These

---

[2] Plaintiff has not attached the aforementioned citations as an exhibit due to their size. These citations are available at the Pennsylvania Department of Health's website at: http://sais.health.pa.gov/commonpoc/Content/PublicWeb/ltc-survey.asp?Facid=364902&PAGE=1&NAME=JOHN+J+KANE+REGIONAL+CENTER+SCOTT+TOWNSHIP&SurveyType=H&COUNTY=ALLEGHENY

      failures are pertinent with respect to the allegations concerning Ms. Opsatnik's allegations against Kane.

   b. Kane has been cited for violation of 42 CFR § 483.20, Resident Assessment, on at least three occasions during this time period. These failures specifically relate to the failure to properly assess a resident. These failures are pertinent with respect to the allegations concerning Ms. Opsatnik's allegations against Kane.

   c. Kane has been cited for violations of 42 CFR § 483.15[3], Quality of Life, on at least four occasions during this time period. These failures pertain to Kane's inability to properly care for and provide appropriate care for residents. These failures are pertinent with respect to the allegations concerning Ms. Opsatnik's allegations against Kane.

    50.    The aforementioned violations indicate that Kane, as a policy and/or custom was deliberately indifferent to Ms. Opsatnik's needs, and as such, and in conjunction with other conduct described herein, deprived her of federally guaranteed and protected rights.

    51.    The repeated and systemic failures in the preceding Paragraph, combined with the failures identified in Paragraphs 47(a)-(q) demonstrate that Kane, as a custom and policy, failed to adhere to the above statutes and regulations and/or, in the alternative, that Kane failed to implement and follow appropriate customs and policies and/or, in the alternative, that Kane had unwritten customs and policies that did not adhere to the applicable statutes and regulations.

    52.    As a proximate result of Defendant Kane's actionable derogation of its regulatory and statutory responsibilities as above-described, Dianne L. Opsatnik was injured as previously referenced and suffered pain and distress as a result of the poor care and treatment which allowed her to suffer harm, as described herein.

---

[3] Now referred to as 42 CFR § 483.24.

53. As such, Dianne L. Opsatnik suffered, and is now entitled to recover the following damages, as well as an award of reasonable counsel fees, pursuant to 42 U.S.C. 1983 and 42 U.S.C. § 1988:

   a. Money expended for hospital, medical, surgical, and nursing expenses incident to the treatment of Dianne L. Opsatnik;

   b. Pain, suffering, embarrassment, humiliation, inconvenience, anxiety, loss of enjoyment of life and nervousness of Dianne L. Opsatnik; and,

   c. Other losses and damages permitted by law.

WHEREFORE, the Plaintiff, Dianne L. Opsatnik, by and through her Attorney-in-Fact, Michelle Keczmer, demands compensatory damages from the Defendant Allegheny County, as owner and operator of John J. Kane Regional Center-SC d/b/a Kane Scott Center, a skilled nursing facility, in an amount in excess of Seventy-Five Thousand Dollars $75,000.00, plus interest, costs of suit and attorneys' fees.

**A JURY TRIAL IS DEMANDED.**

Respectfully submitted,

ROBERT PEIRCE & ASSOCIATES, P.C.

By: /s/ Cynthia A. Howell, Esquire
CYNTHIA A. HOWELL, ESQUIRE
Pa. I.D. No.: 325662
Suite 125
707 Grant Street
Pittsburgh, PA 15219
(412) 281-7229
chowell@peircelaw.com